UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 11-21744-MC-MORENO**

INFOLINK COMMUNICATION SERVICES, INC., PRONTO GROUP, INC., PRONTO GROUP, LLC, and PRIEUR J. LEARY, III,

    Appellants,

vs.

DREW DILLWORTH, Chapter 11 Trustee for INFOLINK GROUP, INC., and INFOLINK INFORMATION SERVICES, INC.

    Appellees.
_____/

## ORDER AFFIRMING BANKRUPTCY COURT ORDER AND DENYING APPELLANTS' MOTION TO RECUSE UNDER 28 U.S.C. § 455 AND 28 U.S.C. § 144

Appellants seek to recuse Bankruptcy Judge A. Jay Cristol from presiding over this case. The basis of the recusal motion is certain comments that Judge Cristol made in open court directed at Appellant Prieur J. Leary, III. In addition, Appellants claim Judge Cristol has a personal bias against Mr. Leary for actions that Mr. Leary took against another Bankruptcy Judge, former Judge Steven Friedman. After carefully considering the statutory standards and the case law, the Court concludes that the motion for judicial disqualification and recusal should be denied as the actions complained about do not rise to the level requiring recusal.

THIS CAUSE came before the Court upon Appellants' Motion to Disqualify/Recuse the Honorable Judge A. Jay Cristol and for Stay of Proceedings Pending Disposition of this Motion (**D.E. No. 1**) filed on **May 13, 2011**.

THE COURT has considered the motion and the pertinent portions of the record, and being

otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is DENIED for the reasons stated in this order.

### I. Background

The basis for the motion for judicial disqualification stems from comments Judge Cristol made in open court during the course of bankruptcy proceedings. Appellants also claims that Judge Cristol has a personal bias and prejudice against Prieur Leary, the debtor's principal, for actions that Mr. Leary took against former Bankruptcy Judge Steven Friedman.

#### A. *The Court's Comments*

Pending before the Bankruptcy Court was a motion for extension of time by Mr. Meyer, who had been listed as counsel of record for the debtor Infolink Communication Services, Inc. At the time of the hearing, Mr. Meyer was requesting time to meet with the debtor prior to trial and to make sure he was proceeding as counsel of record. The Court had set the trial on a motion to appoint a Trustee. During the course of the hearing on the motion for extension of time, Mr. Aaronson, attorney for Chris Kurzweg, said:

> Your Honor, this case, in case the Court doesn't recollect, involves the systematic looting of millions of dollars by the principal of this company. Millions. This company was doing somewhere between $4 and $7 million a year, and the income has been and is continuing to be, we believe transferred to a new entity that was formed in Panama. . . We're talking, approximately, $30 to $40,000 a day of cash income which is no longer going into this debtor entity.

(Hr'g. Tr. at 6.) Mr. Aaronson also refreshed the Court's recollection that Mr. Leary, the debtor's principal, was attempting to represent the debtor in the bankruptcy. It was in this context that the Court made the comments at issue in the motion for judicial disqualification. The Court said:

> Okay. Look, we've had enough of this. Mr. Leary doesn't know what he's doing, apparently. We've established that in some prior proceedings. And he's the president but acting pro se and the Court has -- seems to detect an odor coming from Mr. Leary, perhaps one of those tests is not right, but it doesn't smell good, Mr. Meyer, and it may be that we need to go fast and furious in this matter if there's any truth whatsoever to what's being said here and the way Mr. Leary is conducting himself doesn't give the Court a lot of confidence in Mr. Leary's position or the debtor's position. So, try and get in touch with Mr. Leary, the debtor, whoever you want to talk to and the two of you get back in touch with Barbara and we'll have a telephone hearing tomorrow to decide where we're going, but now that I've -- you've refreshed my memory about Mr. Leary, your case is getting harder, Mr. Meyer.

(Hr'g Tr. at 9-10.) The Court also advised Mr. Meyer that "maybe you want to get out [of the case], too and we'll just go [to trial] without you." (Hr'g Tr. at 10.)

### B. Actions Relating to Bankruptcy Judge Steven Friedman

Appellants contend that in 2007, Prieur Leary embarked on a letter writing campaign against then Bankruptcy Judge Steven Friedman. Mr. Leary's stated goal was to see that Judge Steven Friedman was not reappointed to the bench. Former Judge Friedman was not reappointed to the Bankruptcy bench. Mr. Leary suspects that Judge Cristol and former Judge Friedman maintain a personal relationship and that Judge Friedman's father was instrumental in the appointment of Judge Cristol to the Bankruptcy Bench over 25 years ago.

In his order denying the motion for judicial disqualification, Judge Cristol indicated that he knew nothing about Mr. Leary's letter campaign against former Judge Friedman until reading about it in the motion for judicial disqualification. Notably, Mr. Leary did not move for judicial disqualification until after Judge Cristol issued multiple adverse findings, rulings and determinations regarding Mr. Leary.

## II. Legal Standard

Two federal statutes, 28 U.S.C. §§ 455 and 144, govern recusal and courts must construe them *in pari materia*. *Ray v. Equifax Information Servs., LLC*, 2009 WL 977313, *3 (11th Cir. April 13, 2009). Under these statutes, judges are presumed to be impartial and the movant bears the burden of demonstrating an objectively reasonable basis for questioning the judge's impartiality. *Tripp v. Exec. Office of the President*, 104 F. Supp. 2d 30, 34 (D.D.C. 2000).

## III. Legal Analysis

A. *Motion to Recuse under 28 U.S.C. § 455*

Section 455(a) requires a judge to recuse "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a); *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1329 (11th Cir. 2002). Section 455(b)(1) requires judges to disqualify themselves "where [they] have a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." In *Thomas*, the Eleventh Circuit stated:

> Under § 455, the standard is whether an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality. Furthermore, the general rule is that bias sufficient to disqualify a judge must stem from extrajudicial sources.
>
> The exception to this rule is when a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party. Mere friction between the court and counsel, however, is not enough to demonstrate pervasive bias.

*Id.* (internal quotations omitted) (quoting *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000) and *Hamm v. Bd. of Regents*, 708 F.2d 647, 651 (11th Cir. 1983)). Like the Eleventh Circuit in *Thomas*, the Supreme Court explicitly addressed the situation, such as is present in this case, where a party is complaining about a judge's comments during proceedings and his demeanor. The

Supreme Court said:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. . . .*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration - even a stern and short-tempered judge's ordinary efforts at courtroom administration- remain immune.

*Liteky v. United States*, 510 U.S. 540, 555-56 (1994) (emphasis in original).

Applying these principles to the facts of this case is not difficult. Appellants complain about Judge Cristol's comments in a hearing in open court. Under *Liteky*, Judge Cristol's opinions formed during the course of the bankruptcy proceedings do not constitute grounds for recusal. At most, the comments show Judge Cristol's skepticism regarding the debtor's conduct in the course of the proceedings and a suggestion that the lawyer, Mr. Meyer, may want to disassociate himself from the debtor. Such conduct does not rise to the level requiring recusal under 28 U.S.C. § 455(a) or (b)(1). *In re Walker*, 532 F.3d 1304, 1311 (11th Cir. 2008); *Thomas*, 293 F.3d at 1329. If it did, judges would constantly be required to recuse. Judge Cristol was merely commenting about the debtor's actions in the bankruptcy proceeding; in his view, if the allegations proved true, the debtor's actions were not passing the "smell" test. Accordingly, the Court does not find Judge Cristol's comments warrant recusal.

Likewise, the Court does not find that Judge Cristol had an impermissible bias due to Mr.

Leary's letter campaign against former Judge Friedman. This Court first notes that the Appellants failed to seek recusal on this ground despite knowing this information at the outset of the proceeding. It was not until Mr. Leary received adverse rulings that he moved to disqualify Judge Cristol. Putting aside the timeliness issue, there is no record evidence that Judge Cristol had any knowledge of Mr. Leary, let alone Mr. Leary's activities vis-à-vis Judge Friedman's reappointment. Accordingly, the Court agrees with the Bankrupcty Court that this argument does not rise to the level requiring recusal.

B. *Motion to Recuse under 28 U.S.C. § 144*

A Motion to Recuse filed under 28 U.S.C. § 144 is aimed at recusing a judge for actual bias, as well as the appearance of impropriety. The section requires a party's timely affidavit, which must be submitted along with counsel's additional certification of good faith. Section 144 reads as follows:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. In determining whether recusal is appropriate, therefore, the Court must first determine whether the following three elements have been met: (1) whether a party has made and

timely filed an affidavit; (2) whether the affidavit is accompanied by a good faith certificate of counsel; and (3) whether the affidavit is legally sufficient. *Id.*; *Parrish v. Bd. of Comm'rs of the Ala. State Bar*, 524 F.2d 98, 100 (5th Cir. 1975) (*en banc*).

Although the Appellants mention 28 U.S.C. § 144 in the motion for judicial disqualification, the procedural requirements are not met. There is no affidavit attached or a good faith certificate of counsel. Accordingly, to the extent Appellants are seeking to recuse Judge Cristol under 28 U.S.C. § 144, the motion is denied.

DONE AND ORDERED in Chambers at Miami, Miami-Dade County, Florida, this ___ day of June, 2011.

_____
FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record